# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JEFFREY BOSLEY,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0682** (BOR Appeal No. 2055235)
                    (Claim No. 2019015467)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**


# MEMORANDUM DECISION

Petitioner Jeffrey Bosley, by Counsel T. Colin Greene and J. Thomas Greene Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, Inc., by Counsel Aimee M. Stern, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator granted a 12.68% permanent partial disability award on March 29, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its March 11, 2020, Order. The Order was affirmed by the Board of Review on August 4, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in

1

the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Bosley, a coal prep plant operator, developed hearing loss in the course of and resulting from his employment. The December 17, 2018, Employees' Report of Occupational Hearing Loss indicates Mr. Bosley needed to be tested. Attached was a January 14, 2019, audiogram interpreted by Joedy Daristotle, M.D., who found 24.27% occupationally induced hearing loss.

On March 18, 2019, Stephen Wetmore, ENT, evaluated Mr. Bosley for hearing loss. He noted that Mr. Bosley was exposed to heavy equipment daily in the course of his employment. Mr. Bosley reported that his hearing loss began eight to ten years prior and had progressed. He also had tinnitus in both ears. Mr. Bosley had a history of heart issues, high blood pressure, and high cholesterol. He retired on October 26, 2018. Mr. Bosley stated that he wore hearing protection at work. Dr. Wetmore noted that Mr. Bosley had no significant non-occupational noise exposure and no reported family history of hearing loss. An audiogram was performed and showed severe hearing loss in a similar pattern to the audiogram performed in January of 2019. However, Dr. Wetmore opined that the pattern of hearing loss was not consistent with occupational noise exposure because the hearing loss in the low tones was borderline normal. Mr. Bosley lacked the characteristic checkmark pattern seen in noise-induced hearing loss. Dr. Wetmore therefore apportioned half of the hearing loss for causes other than noise and recommended 12.68% impairment.

The claim was held compensable for noise-induced hearing loss on March 28, 2019. On March 29, 2019, the claims administrator granted a 12.68% permanent partial disability award. The Office of Judges affirmed the claims administrator's grant of a 12.68% permanent partial disability award for occupational hearing loss in its March 11, 2020, Order. It found that there were two audiograms of record, both of which show similar hearing loss patterns. Dr. Daristotle did not apportion for nonoccupational causes. Dr. Wetmore, on the other hand, found that the hearing loss pattern was not consistent with occupational noise exposure. He therefore apportioned half of the impairment for nonoccupational noise exposure.

The Office of Judges noted that West Virginia Code of State Rules § 85-20-47.8 provides

Occupational noise induced hearing loss (NIHL) typically starts in the high frequencies; usually 3000, 4000 or 6000 Hz. With progression, these frequencies

worsen and the hearing loss extends to the lower frequencies; (2000 and 1000 Hz). Even with progression, however, the audiometric pattern remains one that descends from the low frequencies to the high frequencies, sometimes with recovery at 6000 or 8000 Hz. Occupational NIHL does not cause an ascending audiometric pattern (where the low frequencies would be worse than the high frequencies). A flat audiometric curve is also not typical of an etiology of solely occupational NIHL. If an audiogram presents a pattern that is atypical of an occupational NIHL pattern, then the physician interpreting the audiogram should consider causes other than occupational noise exposure in determining the hearing loss etiology. If the otologist/otolaryngologist determines that an injured worker's hearing loss is not all noise induced hearing loss, he or she should estimate the true noise induced hearing loss thresholds and explain his or her calculations on the basis of medical and audiological findings.

The Office of Judges concluded that Dr. Wetmore correctly followed the Rule 20 requirements in arriving at his finding of 12.68% noise-induced hearing loss. Dr. Daristotle failed to consider that Mr. Bosley's hearing loss pattern is not entirely consistent with noise-induced hearing loss. Dr. Wetmore's opinion was therefore determined to be the most reliable. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 4, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Rule 20 specifies the hearing loss pattern seen in occupational noise-induced hearing loss cases. Mr. Bosley's hearing loss pattern, however, is not consistent with noise-induced hearing loss. Mr. Bosley did have several years of exposure to heavy equipment noise; therefore, a portion of his hearing loss is likely due to noise exposure. Dr. Wetmore's finding of 12.68% impairment is reliable.

Affirmed.

**ISSUED: February 1, 2022**

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins

**DISSENTING:**

Chief Justice John A. Hutchison
Justice William R. Wooton

3

HUTCHISON, C.J., dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision.

Accordingly, I respectfully dissent.


WOOTON, J., dissenting:

I respectfully dissent to the majority's affirmance of the summary reduction of petitioner's hearing loss permanent partial disability impairment. I would have placed this matter on the Rule 20 argument docket for a closer examination of the language of Rule § 85-20-47.8 and its application in this matter. This Rule requires that if the typical hearing loss pattern is not found, the evaluating physician "should *consider* causes other than occupational noise exposure" and *if any is found*, he or she should "estimate" the portion that is non-occupational. *Id.* (emphasis added). Here, Dr. Wetmore identified no other causes for petitioner's hearing loss, yet reduced petitioner's impairment by half. The Rule does not allow for apportionment without identifying non-occupational causes and certainly, where none is identified, any apportionment is presumptively arbitrary as it has no foundation in fact or law.

Accordingly, I respectfully dissent.